IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION FILE NO. |
| v. | 1:16-CR-145-TWT-JKL |
| ALONZO WALTON (2)<br>DONALD GLASS (5)<br>LEWIS MOBELY (6) | |

## **FINAL REPORT AND RECOMMENDATION**

Defendant Lewis Mobely's "Motion to Dismiss Count Three of the Indictment for Failure to State a Federal Offense Since the Residual Clause is Unconstitutionally Vague" [Doc. 1516] and Defendant Alonzo Walton's "Motion to Dismiss Count Seven of the Indictment for Failure to State a Federal Offense Since the Residual Clause is Unconstitutionally Vague" [Doc. 1573] have been referred to the undersigned for preparation of a report and recommendation. [*See* docket entry dated Oct. 19, 2018.] Defendant Donald Glass has adopted Mobely's motion. [Doc. 1528.] For the reasons that follow, it is **RECOMMENDED** that the motions to dismiss be **DENIED**.

## I.  BACKGROUND

Defendants Mobely, Walton and Glass (collectively referred to herein as "Defendants") challenge the constitutionality of the residual clause of 18 U.S.C. § 924(c).  That statute prescribes enhanced punishments for any person who uses, carries, possesses, brandishes, or discharges a firearm in relation to either a "crime of violence" or a drug trafficking crime.  *See* 18 U.S.C. § 924(c)(1).  The statute defines "crime of violence" as follows:

> (3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and—
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).  Thus, there are two alternative ways to define a crime of violence for purposes of § 924(c).  The definition in subsection (A) is referred to as the "elements" or "use-of-force" clause and focuses on the specific elements of the offense.  The definition in subsection (B) is referred to as the "residual" or "risk-of-force" clause and focuses on the "nature" of the crime and the potential risk that physical force may be used in committing the crime.  *Id*.

Defendants in the case at bar are charged with violating § 924(c) as follows:[1]

- Mobely is charged in Count Three with knowingly using and carrying a firearm during and in relation to a crime of violence—namely VICAR [2] attempted murder of J.H., in violation of 18 U.S.C. § 1959(a)(5) and O.C.G.A. §§ 16-5-1(a), 16-4-1, as alleged in Count Two of the second superseding indictment.

- Walton is charged in Count Nine with knowingly using and carrying a firearm during and in relation to a crime of violence, namely carjacking in violation of 18 U.S.C. §§ 2119 and 2, as alleged in Count Eight of the second superseding indictment.

- Glass is charged in Count Nineteen with knowingly using and carrying a firearm during and in relation to a crime of violence, namely VICAR murder of Robert Dixon in violation of 18 U.S.C. §§ 1959(a)(5) and 2

---

[1] After Defendants filed their motions to dismiss, the government twice superseded the indictment. The fact that there is a second superseding indictment, however, does not affect the merits of the pending motions because, like the initial indictment, the second superseding indictment charges each of these Defendants with a violation of § 924(c). Because the second superseding indictment is the operative indictment in this case, the Court refers to the counts as alleged in the second superseding indictment.

[2] VICAR is an acronym for "violent crimes in aid of racketeering activity." *See* 18 U.S.C. § 1959.

> and O.C.G.A. § 16-5-1, as alleged in Count Eighteen of the second superseding indictment.

Mobely and Glass first argue that the predicate offenses of VICAR murder and attempted murder do not meet the elements clause because those offenses do not require the use of intentional physical force as an element of the crime. [Doc. 1516 at 6-17.] Walton similarly argues that carjacking categorically fails to qualify as a crime of violence under the elements clause because carjacking does not have as an element the use, attempted use, or threatened use of physical force. [Doc. 1573 at 5-10.] Thus, Defendants maintain, whether the predicate offenses are crimes of violence depends on whether they satisfy the residual clause. Relying on the Supreme Court's decisions in *Johnson v. United States*, 135 S. Ct. 2551 (2015), and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), Defendants also argue the residual clause cannot support a conviction because the residual clause is unconstitutionally vague. [Doc. 1516 at 17-28; Doc. 1573 at 10-20.]

The Court first addresses Defendants' arguments about the elements clause. Second, the Court turns to Defendants' arguments about the residual clause.

## II.  DISCUSSION

### A.  The Elements Clause

When determining whether a crime is a crime of violence under the elements clause of § 924(c), courts use the "categorical approach."  *See United States v. St. Hubert*, 883 F.3d 1319, 1331 (11th Cir. 2018) (applying the categorical approach to determine whether attempted Hobbs Act robbery is a crime of violence under § 924(c)'s elements clause).  In using that approach, courts "look only to the elements of the predicate offense statute and do not look at the particular facts of the defendant's offense conduct." *Id.*  As it is relying only on the elements of the predicate offense, the court "must presume that the conviction rested upon [nothing] more than the last of th[e] acts criminalized, and then determine whether even those acts" qualify as crimes of violence. *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013) (alterations in original) (quotation omitted); *see also United States v. Deshazior*, 882 F.3d 1352, 1357 (11th Cir. 2018) ("In deciding whether an element requires the use of . . . force, we focus on the last culpable conduct criminalized by the statute.  However, we resist engaging in florid exercises of legal imagination which pose highly improbable ways of violating the statute." (quotation and citation omitted)), *petition for cert. filed*, No. 17-8766, May 3, 2018.

As an initial matter, Walton's argument that the predicate offense of carjacking fails to meet § 924(c)'s elements clause is squarely foreclosed by binding Eleventh Circuit precedent. The Eleventh Circuit has held that federal carjacking "meet[s] the requirements that the [elements] clause in § 924(c)(3)(A) sets out for a qualifying underlying offense." *In re Smith*, 829 F.3d 1276, 1280 (11th Cir. 2016); *see also Ovalles v. United States*, 905 F.3d 1300, 1303 (11th Cir. 2018); *United States v. Moore*, 43 F.3d 568, 572-73 (11th Cir. 1994).

Regarding the predicate offenses of VICAR murder and VICAR attempted murder, the VICAR statute provides in relevant part that "[w]hoever, . . . for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders . . . or attempts or conspires to do so, shall be punished (1) for murder, by death or life imprisonment . . .[, and] (5) for attempting or conspiring to commit murder . . ., by imprisonment for not more than ten years . . . ." 18 U.S.C. § 1959(a); *United States v. Robertson*, 736 F.3d 1317, 1329 (11th Cir. 2013).[3] The indictment in this case refers to Georgia's malice

---

[3] There is no dispute in this case that VICAR is a divisible statute with predicate violent crimes—including murder, kidnapping, maiming, and other offenses—listed as alternative elements. *See also United States v. Woods*, __ F. Supp. 3d __, 2018 WL 4095037, at *4 (E.D. Mich. Aug. 28, 2018) (determining that VICAR is divisible by the predicate offenses listed in the statute); *Cousins v. United States*, 198 F. Supp. 3d 621, 625-26 (E.D. Va. 2016) (same). Using the

murder statute, and, thus, the Court considers that state statute in determining the elements of the VICAR predicate offenses. "A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." O.C.G.A. § 16-5-1(a). "Express malice is the deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart." O.C.G.A. § 16-5-1(b). A person attempts to commit a crime when, "with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." O.C.G.A. § 16-4-1.

Mobely and Glass argue that Georgia's malice murder statute does not satisfy the elements clause in § 924(c)(3) because it requires only recklessness, and therefore does not require an active use of force. [Doc. 1516 at 9-15.] Defendants chiefly rely on *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004), in which the Supreme Court held that 18 U.S.C. § 16(a)'s definition of a crime of violence "suggests a

---

"modified" categorical approach and examining the indictment, the Court has determined that Mobely is charged with VICAR attempted murder and Glass is charged with VICAR murder.

category of violent, active crimes" that does not "encompass accidental or negligent conduct," and *United States v. Palomino Garcia*, 606 F.3d 1317, 1335-36 (11th Cir. 2010), in which the Eleventh Circuit held that, for purposes of a then-in-force Sentencing Guidelines enhancement in U.S.S.G. § 2L1.2 (2007), a conviction predicated on a *mens rea* of recklessness does not satisfy the "use of physical force" element. The definition of crime of violence in § 16(a) is identical to § 924(c)(3)'s elements clause, and § 2L1.2 formerly contained a provision substantially similar to the elements clause in § 924(c)(3).

Defendants' argument only goes so far, however. The Supreme Court in *Leocal* expressly left open the question of whether recklessness is a sufficient *mens rea* for a crime of violence for purposes of § 16(a). 543 U.S. at 13. Nor has the Eleventh Circuit adopted the reasoning in *Palomino Garcia* in a published § 924(c)(3) case. Thus, *Leocal* and *Palomino Garcia* are relevant to the Court's analysis here, but they do not conclusively resolve the issue. *See also St. Hubert*, 883 F.3d at 1329 n.10 (noting that *Leocal* and other Supreme Court decisions were relevant to the Court's analytical approach in determining whether attempted Hobbs Act robbery satisfied § 924(c)'s elements clause, but they were not "clearly on point" because they did not concern the same statutes). Nevertheless, the Court does not see why § 924(c)(3)'s elements clause would not contemplate an "active"

8

use of force, given that the language in § 16(a) is identical.  The Court will therefore assume that a predicate offense under § 924(c)(3)'s elements clause must have a *mens rea* that shows an "active" use of force.

To be guilty of a VICAR offense, a person must commit the predicate offense with one of the motives listed in the statute, such as "maintaining or increasing position" in a racketeering organization.  18 U.S.C. § 1959(a); *United States v. Robertson*, 736 F.3d 1317, 1330 (11th Cir. 2013) (discussing the "motive element" in VICAR).  It is difficult to conceive of a situation where a person could kill with a motive to aid a racketeering organization but without the intentional or active use of physical force.

Recklessness is commonly understood to be a conscious disregard for a substantial and unjustifiable risk.  *See* Am. Law Inst., Model Penal Code § 2.02(2)(c); *Voisine v. United States*, 136 S. Ct. 2272, 2278 (2016).  In many jurisdictions, reckless disregard of a very high degree of risk or reckless disregard for human life is a sufficiently culpable *mens rea* for the crime of murder.  *See* 2 W. LaFave, Substantive Criminal Law § 14.4(a) (3d ed. 2018).  The mental state required for murder is therefore more than ordinary criminal recklessness because the defendant consciously disregards a very high degree of risk to human life.

Moreover, as interpreted by Georgia courts, the term "malice" is a more culpable mental state than recklessness. In *Parker v. State*, the Georgia Supreme Court observed that "the concept of malice incorporates the intent to kill." 270 Ga. 256, 259-60 (1998), *overruled on other grounds by Linson v. State*, 287 Ga. 881 (2010); *see also Jones v. State*, 303 Ga. 496, 499 (2018) (malice may be "inferred" by conduct that meets the definition of implied malice). Thus, even where malice is not "express," the intent to kill is a component of that mental state. Georgia's definition of malice is also consistent with the general rule that intent may be inferred when a person knows that his conduct is "***substantially certain***" to cause a culpable result. *Parker*, 270 Ga. at 259. By contrast, "recklessness" in Georgia is a "conscious disregard for the safety of others" where the person is aware that his conduct might cause harm, but it is not substantially certain to happen. *Major v. State*, 301 Ga. 147, 150 (2017). In sum, malice is more culpable than recklessness for two reasons: it has an "intent to kill" component, and the inference of malice is permissible when the defendant was substantially certain that his conduct would result in the killing. *See also Allaben v. State*, 294 Ga. 315, 323 (2013) (Nahmias, J., concurring) (noting that "intent or malice" is a "greater" mental state, while recklessness and criminal negligence are "less culpable"),

*opinion of the Court overruled on other grounds by State v. Springer*, 297 Ga. 376 (2015).[4]

Mobely and Glass also argue that Georgia's malice murder statute does not require any active use of force because murder can be committed by negligent conduct, such as omission or neglect, and because a defendant may be convicted of murder even when the victim's cause of death is unknown. [Doc. 1516 at 13-15.] They cite, for example, a Georgia case where a child's parents were convicted of malice murder after they wholly neglected their infant's nutritional and medical needs. *Sanders v. State*, 289 Ga. 655 (2011). *Sanders* is inapposite. As a factual matter, the *Sanders* case involved abuse that far exceeded neglect or omission; the evidence of intent was circumstantial, but it amounted to malice. *See id.* at 656-59, 661. Further, the predicate offenses in this case are VICAR murder and attempted murder. It defies imagination for a person to commit murder in aid of a racketeering operation by omission or neglect. Courts also have rejected a narrow

---

[4] Some descriptions of "malice" have been phrased in a way that suggests that express and implied malice are different mental states. *See, e.g., Bozzie v. State*, 302 Ga. 704, 706 (2017) ("[A] specific intent to kill is express malice, whereas an intent to commit acts with such a reckless disregard for human life as to show 'an abandoned and malignant heart' amounts to implied malice."). But the prevailing view seems to be that malice is a single mental state capable of proof in two different ways. *See Parker*, 270 Ga. at 259-60.

11

interpretation of "physical force" in similar use-of-force cases. The use of force may occur indirectly, rather than directly. *United States v. Castleman*, 572 U.S. 157, 170 (2014) (holding that, for purposes of 18 U.S.C. § 922(g)(9), force may be applied indirectly); *see also Deshazior*, 882 F.3d at 1357-58. The Supreme Court also has noted, "It is impossible to cause bodily injury without applying force in the common-law sense." *Castleman*, 572 U.S. at 170.

Other courts have also concluded that VICAR murder, predicated on definitions of murder similar to the one at issue in this case, is a crime of violence for purposes of § 924(c)(3). *See United States v. Chavez*, No. 15-CR-285-LHK, 2018 WL 339140, at *11-12 (N.D. Cal. Jan. 9, 2018); *Umana v. United States*, 229 F. Supp. 3d 388, 394 (W.D. N.C. 2017); *United States v. Baires*, 206 F. Supp. 3d 1167, 1180 (E.D. Va. 2016) (holding that VICAR murder was "unquestionably a crime of violence" under the elements clause in § 924(c)); *United States v. Moreno-Aguilar*, 198 F. Supp. 3d 548, 550-54 (D. Md. 2016) (VICAR murder predicated on Maryland's murder statute is a crime of violence under § 924(c)(3)'s elements clause). Moreover, the Eleventh Circuit recently held that Florida convictions for attempted first-degree murder and second-degree murder are crimes of violence for purposes of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). *United States v. Jones*, __ F.3d __, 2018 WL 5291324, at *2-3 (11th Cir. Oct. 25, 2018)

(second-degree murder, which is an unlawful killing "perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life"); *Hylor v. United States*, 896 F.3d 1219 (11th Cir. 2018) (attempted first-degree murder).

As to Mobely's argument that the inchoate offense of attempted murder does not have a force element, the Eleventh Circuit has approved of the Seventh Circuit's reasoning in *Hill v. United States*, 877 F.3d 717 (7th Cir. 2017), which held that, "when a substantive offense qualified as a violent felony under the [ACCA], an attempt to commit that offense is also a violent felony." *Hylor*, 896 F.3d at 1223; *St. Hubert*, 883 F.3d at 1334 (holding that attempted Hobbs Act robbery is a crime of violence under § 924(c)(3)'s elements clause). The Court readily concludes that the reasoning in *Hill* and *St. Hubert* applies here, and the inchoate offense of VICAR attempted murder charged in this case is a crime of violence.

Finally, Mobely and Glass's argument that the rule of lenity applies is without merit because the elements clause is not ambiguous. *See United States v. Santos*, 553 U.S. 507, 514 (2008) ("The rule of lenity requires ***ambiguous*** criminal laws to be interpreted in favor of the defendants subject to them." (emphasis added)).

13

In sum, federal carjacking and VICAR murder and attempted murder predicated on Georgia's malice murder statute have *mens rea* elements requiring an "active" use of physical force and are crimes of violence under § 924(c)'s elements clause.

### B.    The Residual Clause

Even if the predicate offenses did not meet the elements clause, Defendants' motion is due to be denied because their challenge to the constitutionality of the residual clause has been foreclosed by the Eleventh Circuit in *Ovalles v. United States*, 905 F.3d 1231 (11th Cir. 2018) (en banc).  In *Ovalles*, the Circuit held that determination of whether an offense is a "crime of violence" should be made using a "conduct-based approach"—that is, by looking at the particular conduct of the defendant—rather than the categorical approach.  905 F.3d at 1252.  Defendants predicate their void-for-vagueness argument entirely on the now-rejected assumption that the categorical approach applies.  Accordingly, the Court is constrained to reject Defendants' argument that the residual clause is void-for-vagueness and could not support a conviction.[5]

---

[5] The Court notes that Defendants appear to assert only a facial constitutional challenge to the residual clause of § 924(c).  To the extent that they are asserting an as-applied challenge to the statute, the procedurally proper time to raise such a challenge would be at trial after the close of the government's case through a Rule

## III. CONCLUSION

For the foregoing reasons, I **RECOMMEND** that Defendants' motions to dismiss be **DENIED** [Docs. 1516, 1528, 1573]. This case remains certified ready for trial as to these Defendants.

IT IS SO RECOMMENDED this 5th day of November, 2018.

_____
JOHN K. LARKINS III
United States Magistrate Judge

---

29 motion rather than a pretrial motion to dismiss under Rule 12. *See, e.g.*, *United States v. Mozie*, 752 F.3d 1271, 1280 (11th Cir. 2014) (considering as-applied void-for-vagueness challenge raised in motion for judgment of acquittal); *United States v. Graves*, No. 1:13-CR-417-WSD-JSA, 2014 WL 2589428, at *10 (N.D. Ga. June 9, 2014), *adopted, id*. at *5 (deferring as-applied challenge to federal anti-kidnapping statute until after close of government's case-in-chief and "full resolution of the facts"). To resolve an as-applied void-for-vagueness challenge at the present juncture using the conduct-based approach, the Court would have to either make factual findings relating to the charged conduct prior to trial, or, alternatively, employ some sort of procedural mechanism similar to summary judgment, where the Court would view the facts in the light most favorable to one of the parties. The Court is not authorized to do either of those things. *See United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) ("'[A] court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.'") (quoting *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987)); *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) ("There is no summary judgment procedure in criminal cases.") (quoting *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992)).